## JOSEPH FISCHER *v.* THE CITY OF BENICIA.

GRANT OF PUBLIC LAND TO CITY IN TRUST FOR OCCUPANTS.—The City of Benicia was laid out on the public lands of the United States, with streets, parks, and alleys, and the plat recorded. The city was incorporated by the Legislature. A part of the lands within the recorded plat, with the streets, alleys, and parks thereon, is inclosed, and used for agriculture. Congress, by an Act of July 23d, 1866, granted the land within the corporate limits to the city, in trust, that so much of it as is in the *bona fide* occupation of persons shall be conveyed to such persons. *Held,* that parties who were *bona fide* occupants of the same are entitled to conveyances including streets, alleys, and public squares within the plat not opened or used as streets, etc., as well as lots and blocks.

APPEAL from the District Court, Seventh Judicial District, County of Solano.

For an account of the rejection of Vallejo's claim to the Suscol Rancho. (Blackf. 541.)

The parties who laid out the City of Benicia, and who claimed under Vallejo, never made a conveyance to the city of the streets, alleys, and public squares, but sold lots and blocks bounded upon such streets, alleys, and public squares, describing them in their conveyances as so bounded. Fischer, by various mesne conveyances, had the title of the parties who laid out the city.

This was an original action commenced in the District Court to compel the city to execute a trust.

The other facts are stated in the opinion of the Court.

*S. F. & J. Reynolds*, for Appellant.

The Act of Congress recognized the city then existing as such. The grant was made to it as an incorporated city, existing and exercising all the powers of any other city created by the Legislature. The Act of Congress, therefore, had reference to all previous Acts of the Legislature, and the doings of the authorities of the city under such Acts.

The grant was made to the city, with a proviso reserving the rights of persons who may have acquired any legal rights as against the city, declaring that the city should hold those rights in trust for the persons to whom they should be found to belong.

By a previous Act of Congress it is left to the Legislature of the State to provide the mode and means by which those rights are to be ascertained and determined. (5 Stats. at Large, p. 657, Sec. 1.) Congress granted all the lands within the exterior boundaries of the city, without any regard to the quantity, and then left the trust provided for to be determined by the Act of the Legislature of 1866. By that Act the Trustees were created a tribunal to hear the proofs of the several claimants, and upon such proofs to judicially determine such claim; and such determination is conclusive until rescinded upon appeal.

The appeal is provided for in the Act of the Legislature

of 1866.   The District Court, upon the proceedings therein, can only determine whether the Trustees were right in their determination, and whether they had committed errors in arriving to their determination upon the claim made before them.   The Court has no power to compel the Trustees to convey the lots or blocks until it is finally determined that the claimant is entitled to the same.   When that is done, then if the Trustees should refuse to execute the judgment and determination of themselves, or of the District Court upon the appeal, then they may be compelled by the proper proceedings to execute that judgment.

Benicia being a city, and recognized as such by Congress, it must be treated like any other city, and to be governed by the same laws and municipal regulations as other cities.   The citizens acquired all the municipal rights and privileges secured to them by the law and the incorporation.   Therefore, when Congress granted the interest of the Government to the city, the trust reservation in the Act was only intended to apply to such lots, a right to which persons may have acquired as against the city, and under which right they might be entitled to hold as against the city as such.

When a city is incorporated, and streets are laid out, though not actually opened, the corporate authorities have no power to dispose of, or close such streets.   When a person lays out a plat with streets, making a map of the same, and sells lots upon such streets, the grantees of such lots have a vested interest in all of the streets within the plat, and if the same be afterwards incorporated as a city, neither the corporate authorities nor the Legislature have any power to dispose of the streets or to discontinue them.   ( *Weyman* v. *Mayor of New York*, 11 Wend. 486; *Livingston* v. *Mayor of New York*, 8 Wend. 85; *Rodgers* v. *Parker*, 9 Gray, 448; *Mayor of Macon* v. *Franklin*, 12 Geo. 239; *Hannibal* v. *Draper*, 15 Miss. 634; *Breed* v. *Cunningham*, 2 Cal. 368; *Wood* v. *San Francisco*, 4 Cal. 193.)

*L. B. Mizner,* for Respondent.

Respondent contends that as the land in question was, in July, 1866, public land of the United States, the United States could dispose of it in any manner. That as the United States did, by the aforesaid Act, convey it to the City of Benicia, in trust, for the respondent, that the said Trustees have no discretion in the premises, except to determine who were in possession at the time named in the grant; and that point being admitted, it is the clear duty of said Trustees to convey the land as described in the complaint. The words of the Act or grant are the very words of command—"*shall* be conveyed by said city to such parties;" and that the Trustees have no more right to refuse to convey a portion of the land than they have to refuse to convey it all—the quantity which they refuse to convey in this case amounting to nearly one quarter of the whole tract. (*Napa Valley Railroad Company* v. *Napa County,* 30 Cal. 455; *People* v. *Board of Supervisors of Lake County,* 33 Cal. 487.)

Counsel for appellant, in their brief, seem to rely entirely upon the point that certain streets, alleys, and public squares have been dedicated to public use. To which we answer that no such defense is set up in their answer, and that the defendants would not have been permitted to prove it under the pleadings. In *City of Macon* v. *Franklin,* 12 Geo. 249, the Court say: "There is no averment that the city had dedicated the land to public use, nor is there any averment of equivalent import." But admitting that the averment is properly made, we say that no valid dedication can be made except by the owner of the fee. (Angell on Highways, 105; Washburn on Easements, 132; *San Francisco* v. *Calderwood,* 31 Cal. 585, and cases cited.) And as there is no pretense that the owner of the fee to the land in question ever dedicated any portion of it to the public use, it is difficult to see how appellant can sustain his position on that ground.

It is admitted that Semple, Larkin, and Vallejo, who laid out the town in 1847, and immediately commenced the sale

of lots therein, and bounding them by the streets, etc., had no title, and that they never afterwards acquired any; and it is not contended that the City of Benicia ever had any title to the land in question until the grant from the United States in 1866.

But there is another indispensable ingredient to a complete dedication of land to the public use—it must be accepted and used by the public. It is a part of the agreed statement in this case, "that none of the streets, alleys, or Pacific Park, included within the lands described in the complaint in this action, have ever been used by said city as streets, alleys, or park." In *Hemphill* v. *Boston*, 8 Cush. 196, Mr. Chief Justice Shaw defines dedication "as implying not only a gift of the land by the owner to the public for a way, but also an acceptance of the gift by the public, either expressly or impliedly." In the case at bar the owner has not given or dedicated, nor has the public accepted.

It is held in *Boyer* v. *Indiana*, 16 Ind. 451, that "platting and recording a map of a town by owners is a dedication so far as their action depends, but must be accepted by the public." So, even admitting that Semple & Co., or Benicia had been the owners of the land in question, there would have been no dedication for the want of acceptance and use. It is well established that no presumption of dedication of lands of the United States for a highway can be raised from such use of the public land by the public. (*Phipps* v. *The State of Indiana*, 7 Blackf. 512; and *Harden* v. *Jasper*, 14 Cal. 642, and cases cited by appellant in that case.)

Railways, canals, etc., only have the right of way over the public lands by special or general grants from the Federal or State Governments.

By the Court, SAWYER, C. J.:

Prior to 1850, M. G. Vallejo claimed to own, under a Mexican grant, a large tract of land, including the present City of Benicia, called the Suscol Rancho. In 1850 the City of

Benicia was incorporated under an Act of the Legislature, and the lands included within its corporate limits, under the authority of its officers, were laid out into blocks, lots, streets, alleys, public squares, etc., and a map thereof made and filed. In 1851 another Act incorporating said city was passed, and another map made and adopted as the official map of said city. Many lots were sold to citizens and others in accordance with said surveys and maps by the parties claiming title under the said Mexican grant. The plat embraced a large tract of land, over the greater portion of which the streets and blocks have never to this day been opened, or in any way occupied as public streets, nor have the lots been separately occupied as town lots, but, on the contrary, the land on a large portion of the tract has been fenced up and occupied in large tracts for agricultural and pasturage purposes. In 1862 the claim of title under the Mexican grant was finally rejected by the Supreme Court of the United States, so that the title then appeared to be in the United States, and the lands to be a part of the public domain of the United States. Subsequently the city authorities presented a memorial to Congress, praying the passage of an Act authorizing the city to enter the lands within the corporate limits for the benefit of the occupants and *bona fide* owners of improvements thereon, according to their respective interests. On the 20th of February, 1866, the Legislature of California, apparently in anticipation of the passage of such an Act by Congress, passed an Act providing for giving notice to claimants, and adopting proceedings for ascertaining who were the rightful occupants of portions of lands so within the charter limits, and for vesting in such occupants any title derived by the city through any patent from the United States to the City of Benicia under any such contemplated Act of Congress, and for disposing of such unoccupied and unimproved property as should fall to the city. Section eleven of said Act authorized the Trustees to close and convey to the owner or owners of property fronting thereon, any and all public squares, streets, and

alleys, as laid down on the official map of said town, north of M street and west of Third street. (Stats. 1865–6, p. 110, Sec. 11.) The portion thus described outside of said lines, includes about two thirds of the entire city plat, and constitutes a large part of that portion in which the streets, alleys, and public squares have never been opened, or used as such, while that portion of the city within said lines, and between these and the waters of the bay, embraces that portion of the city which has been occupied as city lots, and in which the streets, etc., have been opened and used as public streets. On the 23d of July following (1866) Congress passed "An Act to quiet the title to certain lands within the corporate limits of the City of Benicia," etc., which provides "that all the right and title of the United States to the land situated within the corporate limits of the City of Benicia, in the County of Solano, State of California, as defined in the Act incorporating said city, passed by the Legislature of the State of California, April 24th, 1851, be and the same are hereby relinquished and granted to the said city and its successors, upon trust, however, that so much of said lands as is in the *bona fide* occupancy of parties upon the passage of this Act, by themselves or tenants, shall be conveyed by said city to such parties; *provided*, however, that the relinquishment and grant by this Act shall not extend to any lands within said corporate limits, occupied as a military depot of the United States, or heretofore reserved by the United States for public purposes, nor shall they interfere with or prejudice any valid adverse right or claim, if such exist, to said land, or any part thereof, or preclude a judicial examination and adjustment thereof." (14 United States Statutes at Large, 209.) Under these Acts of the Legislature of California, and of Congress, the plaintiff presented his claim to a tract of land, lying outside and to the northward of said M and West Third streets, of which he had been in possession over five years. It was inclosed in large tracts, so as to embrace blocks, lots, portions of streets, alleys, and public squares, and used for residence, tillage, and pasturage,

like other farming lands. None of the alleys, streets, or of the portion of Pacific Park, thus inclosed and used, had ever been used as streets, alleys, or park. The Trustees found in favor of the plaintiff as to the lots and blocks so possessed, and awarded the same to him, but excluded the streets, alleys, and portion of the park, on the ground that it was not contemplated by the Act of Congress that these should be conveyed, and ordered a deed accordingly. The District Court, however, in this action, took a different view, and adjudged that he was entitled to a conveyance of the whole land occupied by him, including the streets, alleys, and portion of the park, of which he was possessed, and in the actual *bona fide* occupation at the time of the passage of the Act. We think the latter view correct. The title, at the passage of the Act, was in the United States. The land was a part of the public domain. Neither the United States, nor the occupant for the preceding five years, had ever made any dedication of these lands, or any part of them, to public use. The City of Benicia had not availed itself of any other statutes of the United States, then in force, to acquire title to the lands. The only right it has is derived through the Act of Congress of July 23d, 1866, and the title thus acquired is taken subject to all the trusts and limitations in the Act prescribed. The Legislature of California itself could not modify or limit those trusts. The grant under the Act is, as we have seen, " upon trust, however, that *so much of said lands as is in the bona fide occupancy of parties*, upon the passage of this Act, by themselves or tenants, shall be conveyed by said city to such parties." Nothing is said about lots, blocks, streets, alleys, or parks. It says, "so much of said lands," without limitations, or exception, so far as streets, alleys, or parks are concerned. There are other specific exceptions in the proviso, not affecting the question in this case, and it must be presumed that those specified are all the exceptions designed to be made. No authority is given to the Legislature, or city, to limit or modify the trust. In the

large tract outside of M and West Third streets, the streets, alleys, and parks laid down on the map do not appear to have ever been opened, or occupied, or used for such purposes by the public. It is evident that the city, like many others, was laid out on a grand scale, and far in advance of the wants of the generation then in being; and this must have been the opinion of the Legislature in adopting the eleventh section of the Act of the Legislature, before cited, authorizing the Trustees to vacate the streets, alleys, etc., in that part of the city. For years that part has been occupied like other farming lands, and the tract in question has been thus fenced up and occupied without any reference to streets, alleys, etc. Within the streets named—M and West Third streets—the streets, etc., have been, so far as needed at least, opened and used. Such streets, etc., as have been opened, used, or occupied as such, and so far as the wants of the town had then required, would not, of course, have been fenced up or occupied. They could not well have been in the *bona fide* occupancy of private parties, and would not, therefore, pass to private parties under the terms of the Act.

We do not see that this provision, as construed, can produce any inconvenience to the public. Whenever the public wants require an extension of the streets over the lands now used for agricultural purposes, the interests of the proprietors, unless human nature has been greatly changed, will doubtless be sufficient to induce a surrender of all that may be required for streets, in order that the value of the remainder, greatly enhanced thereby, may be realized. These considerations were doubtless kept in view in the passage of the Act. But, however this may be, we must construe the Act as we find it, and it seems to us, under the plain reading of the statute, that the plaintiff is entitled to a conveyance of the land, of which he was in the *bona fide* occupation at the time of the passage of the Act of Congress, including that which was merely designated as streets, etc., on the map of the city, but never used as such. The Government owned it. No part of it had ever been dedicated to public use by

the owner.   The United States Government was authorized to affix its own conditions to its legislative grant, and one of the terms of the grant was, that "so much of said lands as is in the *bona fide* occupancy of parties," without other limitation, should be in trust for such occupants, and "be conveyed by said city to such parties."   And the rights of the parties rest upon this Act.

Judgment affirmed, and remittitur directed to issue forthwith.